THE BANK OF THE MONONGAHELA VALLEY, Appellant, v. CHARLES WESTON, as Executor of ABIJAH WESTON, Deceased, Respondent, Impleaded with Others.

1. APPEAL — UNANIMOUS AFFIRMANCE — EVIDENCE TO SUPPORT VERDICT.  After unanimous affirmance by the Appellate Division of a judgment entered upon a verdict of a jury the question whether the verdict is supported by any evidence is not open to review by the Court of Appeals.

2. PARTNERSHIP — ACCOMMODATION INDORSEMENT — ESTOPPEL.  A partner who has knowledge that a copartner is persistently using the firm name for the accommodation of others by indorsing notes in the name of the firm for purposes foreign to the partnership business is estopped from questioning the validity of a note bearing such an indorsement, although made after the dissolution of the partnership, where he took no effectual means to put a stop to the practice and did not publish or communicate the fact of the dissolution to the public or to parties who were giving credit to the firm name.

3. EVIDENCE — BAD FAITH.  A bank is not chargeable with bad faith because it discounted notes at the rate of seven per cent per annum when the legal rate of interest was but six per cent.

*Bank of Monongahela Valley* v. *Weston*, 62 App. Div. 623, reversed.

(Argued June 18, 1902; decided October 7, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 15, 1901, affirming a judgment in favor of defendant entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*C. S. Cary* for appellant.  When a member of a firm knows of the unauthorized use of the firm name in the indorsement

of paper, it becomes his duty to stop it, and upon failure to do so he becomes estopped as to persons dealing with the paper in good faith and becomes liable for any loss they may incur. (Story's Eq. Juris. § 1546; *Walsh* v. *H. F. Ins. Co.,* 73 N. Y. 10; *Sheldon* v. *Eickemeyer,* 90 N. Y. 613; *F. & M. Bank* v. *B. & D. Bank,* 16 N. Y. 135; *N. Y. & N. H. R. R. Co.* v. *Schuyler,* 34 N. Y. 70; *Hope* v. *Lawrence,* 50 Barb. 259; *Niven* v. *Belknap,* 2 Johns. 589; *O. C. Bank* v. *De Puy,* 17 Wend. 47; *Messenger* v. *F. Nat. Bank,* 6 Daly, 190; *Bank of Batavia* v. *N. Y., L. E. & W. R. R. Co.,* 106 N. Y. 199; *Trustees, etc.,* v. *Smith,* 118 N. Y. 634.) Plaintiff was the *bona fide* transferee of the note in question. (*Cheever* v. *P. R. R. Co.,* 150 N. Y. 59; *A. E. Nat. Bank* v. *N. Y. B. Co.,* 148 N. Y. 698; 1 Daniel on Neg. Inst. 388.) The fact that seven per cent interest was charged, when six per cent was the legal rate of interest, cannot affect the question of good faith. Usury is not pleaded. (*W. C. Bank* v. *Low,* 81 N. Y. 566; *Thorne* v. *Alvord,* 32 Misc. Rep. 460; *Nash* v. *White's Bank,* 105 N. Y. 243; 1 Daniel on Neg. Inst. §§ 777, 779, 819.)

*J. H. Waring* for respondent. The several indorsements were invalid as against the respondent's testator. (*Foot* v. *Sabin,* 19 Johns. 154; *Laverty* v. *Burr,* 1 Wend. 529; *Sweetzer* v. *French,* 56 Mass. 339; *Gansvoort* v. *Williams,* 14 Wend. 133; *Smith* v. *Weston,* 81 Hun, 87.) The plaintiff took the notes in suit charged with notice of the accommodation character of their indorsements. (*Nat. P. Bank* v. *G. A. N. W. & Co.,* 116 N. Y. 281; *Fielding* v. *Lahens,* 6 Abb. [N. S.] 341; *Stuhl* v. *Catskill Bank,* 18 Wend. 466; *Gansvoort* v. *Williams,* 14 Wend. 133; *Bank* v. *Cameron,* 7 Barb. 143; *Smith* v. *Weston,* 159 N. Y. 194; *Bank of Monongahela Valley* v. *Weston,* 159 N. Y. 201.) It cannot be claimed that the finding of the jury is contrary to or against the weight of evidence. (*Marden* v. *Dorthy,* 160 N. Y. 390; *Amherst College* v. *Ritch,* 151 N. Y. 282; *Szuchy* v. *Hillside C. & I. Co.,* 150 N. Y. 219.) The original note

was void for usury. It was dated and payable in the state of New York, and is subject to the laws of that state against usury. (*Jewell* v. *Wright*, 30 N. Y. 359; *Eastman* v. *Shaw*, 65 N. Y. 522; *Clark* v. *Sisson*, 22 N. Y. 312; *Newell* v. *Doty*, 33 N. Y. 83; *Miller* v. *Zimer*, 111 N. Y. 441; *Perkins* v. *Smith*, 116 N. Y. 441; *People* v. *Davenport*, 91 N. Y. 574.)

O'BRIEN, J. When this case was here upon a former appeal (159 N. Y. 201) we had to review exceptions taken by the plaintiff to a dismissal of the complaint at the trial. It now comes here in a different form, since there has been a verdict of a jury in favor of the defendants that has been unanimously affirmed below. Therefore, the question whether the verdict is supported by any evidence is not open to review in this court, but every other question of law properly raised at the trial is. It is quite impossible to peruse the record without being impressed with the difficulty of defending the judgment upon principles of natural justice or even upon the most technical rules of law. While this court is confined by the Constitution and the statute to the review of such other questions of law as appear upon the record, we must first know what the conceded or undisputed facts are, in order to apply the law to the exceptions taken at the trial:

The plaintiff is a West Virginia bank that is seeking to collect in the courts of this state certain commercial obligations which it holds against parties residing here. The action is upon two promissory notes, the first for $6,500, dated December 15, 1892, payable four months from date, and the other for $5,000, dated March 31, 1893, payable thirty days after date. Both notes were made by Edwin F. Curtis to the order of and indorsed by Weston Bros., a firm composed of three brothers, then extensively engaged in business and of unquestionable financial standing and credit. The plaintiff discounted these notes for the maker at the rate of seven per cent, paying to him the proceeds, and when due they were duly protested for non-payment. The questions in the case arise solely upon the answer of Abijah Weston, a member of

the firm that indorsed the paper, and who died subsequently to the joining of issue and after the case was decided in this court upon the former appeal. This appeal involves only his liability as one of the indorsers, or the liability of his estate, his executor having been substituted in his place as a defend. ant. His testimony, however, taken upon the former trial, including his acts and correspondence bearing upon the issues, appear in this record and constitute an important feature of the case as it was submitted to the jury.

The answer of this defendant, so far as it is important to refer to it here, was simply this: That on the 3d day of January, 1892, prior to the making or indorsing of the notes in question, the firm of Weston Bros. was dissolved, that neither of the notes in suit was made, indorsed or discounted in, about or on account of the partnership business, or the winding up of its affairs, but that his brother William W. Weston, another member of the firm, after the dissolution, fraudulently indorsed the paper in the firm name at the request and for the accommodation of the maker and without the knowledge, consent or authority of the other members of the firm, all of which the plaintiff had notice when it discounted the paper.

The issues or questions presented for trial upon the pleadings were these: (1) Whether the firm was in fact dissolved as to the plaintiff; (2) whether the plaintiff had any knowledge or notice of the dissolution when it took the paper; (3) whether the plaintiff was an innocent or *bona fide* holder of the paper within the law merchant.

The facts bearing upon these issues are undisputed and identical with the facts appearing in the record when the case was here on the former appeal. There was a formal paper executed by the three partners stating that the firm was dissolved on "this 5th day of January, 1892, by mutual consent," with a statement that the business would be continued at the same place by the "A. Weston Lumber Co." It is admitted that this notice of the dissolution was never published and that the plaintiff had no knowledge of the dissolution. The plain-

tiff's dealings with paper indorsed by the firm commenced long prior to the execution of this writing formally dissolving it and under circumstances quite significant upon the question of good faith.  On the 26th day of May, 1891, the cashier of the bank at Olean, where the banking business of the firm was transacted, addressed a letter to the plaintiff's cashier inclosing a note of $2,500 made by Curtis, the maker of the notes in question and indorsed by the firm, for discount for a third party named in the letter.  Two days after the plaintiff's cashier replied to the letter saying that he had received the letter and note but that "the parties are all strangers to us.  Do you regard the note as all O. K.?" To this the cashier of the Olean Bank, who knew all about the firm if any one did, replied immediately "we consider Weston Brothers good beyond question.  They are probably worth from one to two million."  The plaintiff discounted the note, which was renewed from time to time, and that note with others of the same character made and indorsed by the same parties constitute the consideration of the notes in question. If that note had not been renewed when due it would be difficult to suggest any defense that the firm or any of its members could make to a suit upon the indorsement.  The transaction is important now only so far as it tends to show how and under what circumstances the plaintiff was induced to discount paper upon the faith of the firm indorsement.  There is nothing in the record to show that anything subsequently came to the knowledge of the plaintiff calculated to impair in the least the effect of a recommendation coming from such a responsible source.  It appears without any dispute, since the facts were testified to by Abijah Weston himself, that for ten years prior to the indorsement of the notes in question he knew that his brother, who made the indorsement on these notes, was using the firm name for the accommodation of others by indorsing notes in the name of the firm, outside the partnership business.  He had warned him against this course of business several times and forbidden him to do it any more.  He remonstrated with him against the consequences that might

result from such indorsements and even threatened to "post him" on account of this misuse of the firm name, but took no action to prevent it, relying generally upon his brother's promise to desist but which promise was always violated. The testimony on this point is collated and discussed fully in the opinion of this court upon the former appeal and it is not necessary to repeat it here since a general reference is sufficient for all the purposes of this appeal. The brother and member of the firm who was thus engaged for years in using the firm name to give credit to the paper of parties outside the partnership business was all the time acting or assuming to act as the agent of the firm. When one partner, with the knowledge of the other partners, uses the firm name and indorsement to give credit to others in matters foreign to the partnership business, and this course of conduct is allowed by the other partners to continue during a long series of years, the question must always arise as to how far the habitual exercise of such an agency or authority, originally irregular or even void, is cured by acquiescence or made binding upon the firm as such by the doctrines of negligence or estoppel, and this brings us to the exceptions taken to the charge of the learned trial judge in submitting the case to the jury.

The plaintiff's counsel requested the court to charge that when the defendant became aware of the persistent and continued use of the firm name by his brother, outside the business of the firm, it became his duty to take some public action for the protection of outside parties. The court refused to charge the request, and the plaintiff's counsel excepted. We think that the request embodied a correct and important principle applicable to the proofs in the case, and that affected the issue between the parties from various directions, and should have been charged. When spurious stock has been issued and put in circulation by the officer of a corporation, and the board of directors, through negligence, have failed to discover or prevent the fraud upon the public, the stock so fraudulently issued and put in circulation will, in the hands of an innocent holder, be binding upon the corporation. (*N.*

*Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 58.)    This principle is equally applicable to a partnership when the members through negligence permit one of its number to indorse and put notes or commercial paper in circulation that purports upon its face to be genuine and the obligations of the firm, when it is in fact fraudulent or for the accommodation of others outside the partnership business.    The right of one partner to use the firm name rests upon those rules and principles applicable to the relations of principal and agent.    The principal will be often bound by the act of his agent in excess or abuse of his actual authority as between the principal and third persons who believing and having the right to believe that the agent was acting within and not exceeding his authority would sustain loss if the act was not considered that of the principal. The doctrine is established to prevent fraud, and proceeds also upon the ground that when one of two innocent persons must suffer from the act of a third person, he shall sustain the loss who has enabled the third person to do the injury. ( *Walsh* v. *Hartford Fire Ins. Co.*, 73 N. Y. 10.)    When a partnership firm having knowledge of the continued and persistent conduct of one of its members in lending the credit of the firm to others by means of accommodation paper, neglects to promptly and actively condemn the unauthorized act, and to seek judicial redress after knowledge of the committal of it, that will be deemed an acquiescence in it, and if innocent third persons have been led thereby to put themselves in a position from which they cannot be taken without loss, if the act were held invalid, the other partners will . be estopped from questioning it.    (*Sheldon H. B. Co.* v. *Eickemeyer H. B. M. Co.*, 90 N. Y. 613.)    The act of one partner who without authority places the firm name upon accommodation paper will not bind the firm when the paper is held by parties having knowledge of the consideration, but when negotiated to a *bona fide* holder the firm is precluded from questioning the authority of the partner and is effectually bound.    (*Farmers & Mechanics' Bank* v. *Butchers & Drovers' Bank*, 16 N. Y. 135.)

There are numerous other cases and authorities that deal with the unauthorized or fraudulent acts of agents that mislead innocent third parties to their prejudice that have been held to be binding upon the principal. The rule is not always expressed in the same form of words, but however stated the application to this case is apparent.. These expressions have all the force of maxims to govern the conduct of men under circumstances such as the defendant was placed in when knowledge of the misconduct of his partner was brought home to him. The knowledge that he then acquired, or which is to be imputed to him, was sufficient to alarm the most serene confidence, since it appears that during ten years prior to the date of the notes in question paper of the same character as that now in question and put in circulation in the same way to the amount of over one million dollars passed through the bank where the defendant kept his account, and yet the defendant took no effectual means to put an end to the practice of lending the firm name for purposes foreign to the partnership business, and what is more remarkable still when the partnership was dissolved, as between the members themselves, the fact was not published or communicated in any way to the public or to parties who were giving credit to the firm name.

We think that the plaintiff was entitled to have the principles stated applied to the facts of the case. The request referred to above was repeated in various forms and with more or less modification of language, but in the main was refused. It is a general principle of law applicable to this class of cases that if a person either by words or conduct manifests his consent to an act which has been done he cannot question the legality of the act. If he has an interest to prevent an act being done, but so acquiesces in it as to induce a reasonable belief that he consents to it and the position of others is changed by their giving credit to his sincerity, he has no more right to challenge the act to their prejudice than he would have had it been done by his previous license. In equity where a man has been silent when in conscience he ought to have spoken, he shall be debarred from speaking

when conscience requires him to be silent. (Story's Eq. Juris. [Redf. ed.] § 1546; *Niven* v. *Belknap*, 2 Johns. 589; *Onondaga Co. Bank* v. *De Puy*, 17 Wend. 47; *Bank of Batavia* v. *N. Y., L. E. & W. R. R. Co.*, 106 N. Y. 199; *Trustees, etc., of Brookhaven* v. *Smith*, 118 N. Y. 634; *Griswold* v. *Haven*, 25 N. Y. 600; *Hope* v. *Lawrence*, 50 Barb. 259; *N. Y., N. H. & H. R. R. Co.* v. *Schuyler*, *supra*.) It was necessary for the defendant to show that the plaintiff had actual knowledge or was chargeable with knowledge of two important facts, namely, the misuse by the other partner of the firm name before or after the dissolution and the actual or formal dissolution by the partners as between themselves. The formal act of dissolution had no effect upon the plaintiff until it was chargeable with knowledge of the fact.

The plaintiff's counsel requested the court to charge that the discount of the notes at the rate of seven per cent when the legal rate of interest in the state where the bank was located was but six per cent, is no evidence whatever of bad faith on the part of the plaintiff in discounting the paper, it appearing from the undisputed evidence that it was the plaintiff's usual rate of discount. The court refused to so charge but left the question to the jury and the plaintiff's counsel excepted. The question raised by this exception is one of law. The court was requested to hold that certain evidence was not competent to prove a certain material fact which was in issue between the parties. We think that the evidence did not prove or tend to prove the fact. The defense of usury was not interposed and that question is not in the case. The sole question is whether the retention by the plaintiff of one per cent in addition to the ordinary and lawful rate of discount was a circumstance to show bad faith on the part of the holder of the notes, or in other words to show that the plaintiff was not a *bona fide* holder. It has been held that when paper is purchased at half the face value the price paid was a circumstance bearing upon the innocence or good faith of the purchaser. (*Vosburgh* v. *Diefendorf*, 119 N. Y. 357.) It may have been held in other cases that the retention of a large

sum from the face of the note was a circumstance to be considered upon the question of bad faith in connection with other suspicious facts, but there the discount was at the rate of fifteen to eighteen per cent. (*Canajoharie Nat. Bank* v. *Diefendorf*, 123 N. Y. 191.) It has never been held that such an insignificant sum as one per cent when retained could, standing alone, affect the good faith of the transaction. The case of *Hall* v. *Wilson* (16 Barb. 548), though undoubtedly a very extreme authority, does not go to that extent. Moreover what was said in that case was in support of the defense of usury where the note was never delivered or had any inception, but was stolen from the maker and purchased at a discount from the thief by the holder under circumstances tending to show negligence or bad faith. The case cannot, we think, be regarded as an authority to justify the trial court in refusing to charge the request now under consideration. The rights of the holder of commercial paper wrongfully or fraudulently put in circulation were stated in a recent case in this court. (*Cheever* v. *Pittsburgh, S. & L. E. R. R. Co.*, 150 N. Y. 59.) It was there held that the circumstances under which such paper is taken or purchased by a third party were to be tested by the simple rule of common honesty and good faith. Applying the doctrine of that case to the one at bar it is difficult to find anything in the record in the least suggestive of bad faith on the part of the plaintiff when it discounted the notes in question. Such a large portion of the moneyed capital of the country is employed in making loans by discounting bills and notes, that it would be a harsh and unreasonable rule to hold that when a bank, discounting commercial paper under such circumstances as the plaintiff discounted the notes in question, attempts to collect it, a rate of discount such as was reserved in this case may be submitted to a jury as a circumstance to impeach the position of the plaintiff as a *bona fide* holder.

The judgment should be reversed and a new trial granted, costs to abide the event.

PARKER, Ch. J., GRAY, BARTLETT, MARTIN, VANN and CULLEN, JJ., concur.

Judgment reversed, etc.