NEW YORK BANKERS, INC., Appellant, *v.* HERBERT DUNCAN, Respondent.

(Argued June 11, 1931; decided July 15, 1931.)

*Charles H. Kelby* and *Abraham J. Halprin* for appellant. Plaintiff had no actual knowledge that the notes had been procured from the defendant by fraudulent representations or that the defendant made any such claim. (*Title Guarantee & Trust Co.* v. *Pam,* 232 N. Y. 441.) There was no duty upon the·plaintiff to inquire into the nature of the transaction which gave rise to the notes. (*Cheever* v. *Pittsburgh R. R. Co.,* 150 N. Y. 59; *Coopersmith* v. *Maunz,* 227 App. Div. 119; *Hurst* v. *Lee,* 143 App. Div. 614; *American Surety Co.* v. *Palmer,* 211 App. Div. 172; *Dutch* v. *McMahon,* 219 App. Div. 203.) Neither friendship nor close relationship between the payee and the holder will prevent the latter from being a holder in due course in the absence of proof of actual knowledge or bad faith. (*Title Guarantee & Trust*

Co. v. *Pam*, 232 N. Y. 441; *Karpas* v. *Bandler*, 223 App. Div. 306.) The defendant failed to establish a cause of action upon his counterclaim since plaintiff was not a party to the contract which the defendant sought to rescind and since the plaintiff was itself guilty of no fraud toward the defendant. (*Alexander City Bank* v. *Equitable Trust Co.*, 223 App. Div. 24; *Inman* v. *Credit Discount Corp.*, 230 App. Div. 505.) Although the defendant had received certificates of the indebtedness in exchange for the stock and had also received dividends on the stock prior to that exchange, the judgment permits him to retain the certificates and the dividends and at the same time to defeat the action on the notes representing part of the purchase price and to recover such portion of the purchase price as he had already paid. This is error for it is well established that fraud is no defense to an action on a note unless the maker rescinds and restores or offers to restore the consideration received. (*New York Trust Co.* v. *American Realty Co.*, 213 App. Div. 272; *Farmers' Nat. Bank* v. *St. Regis Paper Co.*, 77 App. Div. 558; *Reno* v. *Bull*, 226 N. Y. 546; *United Transportation Co.* v. *Glenn*, 225 App. Div. 171; *Soper* v. *St. Regis Paper Co.*, 38 Misc. Rep. 294; 76 App. Div. 409.)

*Gerald F. Hoyt* and *John S. Russell* for respondent. The fraud of the salesman is binding upon the plaintiff. (*Title Guarantee & Trust Co.* v. *Pam*, 232 N. Y. 441; *Kittredge* v. *Grannis*, 244 N. Y. 168.) The judgment for the defendant on his counterclaim was proper in view of the conclusion reached by the jury that the plaintiff did not act in good faith when it received the original notes of the defendant. (*Roberts* v. *Ely*, 113 N. Y. 128; *Miller* v. *Schloss*, 218 N. Y. 400; *Spotten* v. *DeFreest*, 140 App. Div. 792; *Miller* v. *Barber*, 66 N. Y. 558.)

CARDOZO, Ch. J. The complaint is upon three negotiable promissory notes given by the defendant to the

Arflex Lamp and Fixture Manufacturing Corporation, and indorsed by the payee to the plaintiff.

The answer is, *first*, that the notes in suit and others renewed thereby were procured through fraudulent representations by the agent of the payee and were thereafter received by the plaintiff with knowledge of the fraud, and, *second*, a counterclaim for payments made to the plaintiff on account of the notes before discovery by the defendant of the wrong that he had suffered.

The notes renewed by those in suit were given by the defendant to the Arflex corporation in payment for shares of stock. To induce the purchase of the shares, fraudulent statements as to the financial condition of the corporation were made to the defendant by the salesman McIntire. There is a concession by the appellant that the finding of fraud has support in the evidence. The notes, promptly after delivery, were indorsed by the payee to the plaintiff, New York Bankers, Inc., which paid value therefor. The question is whether it took them with notice of the fraud.

McIntire, the guilty salesman, is the holder of a majority of the common stock of the Arflex corporation. He is also a majority shareholder in the plaintiff, though his holdings are subject to the restrictions of a voting trust. In neither corporation is he a director or an officer. Gunther, the plaintiff's president, acted for the plaintiff in the matter of the discount. He was unquestionably a banker of experience and standing. Even so, his testimony as to this transaction is uncertain and indefinite, little more than a recital of the usual course of business. He did not know, so he tells us, that the notes had been given in return for shares of stock; if he had known this, he would have wished to inquire about them further. He supposed them to have been given for lighting fixtures sold by Arflex to a customer. He does not tell us, however, by whom the notes were

offered to him, whether by McIntire or some one else. There should have been full disclosure as to this, for McIntire's intervention would be freighted with significance.  He was not, as we have seen, an officer of Arflex and did not represent it in its business generally, so far at least as we are informed by anything in the record. He had been acting for it as a salesman in the disposition of its shares, and this to Gunther's knowledge.  If the notes were in his custody and were offered by him for discount, that circumstance in itself must have carried with it to the buyer a hint as to their origin.  At best, there would be something unusual, if not indeed irregular, in the offer of the paper by an agent for the sale of shares instead of by the fiscal officers who normally would represent the corporation in the business of a discount. True, Gunther does not tell us that the paper was offered to him by McIntire, but neither does he say that it was not, and the events that followed make it highly probable that it was.  When the notes matured from time to time, and there was need of renewals or of payments on account, it was McIntire who notified the defendant; and to him and not to the plaintiff nor to Arflex, the defendant transmitted the new paper and the checks for the part payments, many of these to the order of McIntire himself.  Significant, also, in its bearing upon the plaintiff's state of mind is the testimony of Mayo who at the time of the trial was the plaintiff's vice-president and till then had been an employee with supervision of its books.  He states that Arflex paper was discounted, whenever offered, without inquiry or security. Later on, this statement is explained or retracted, but whether adequately or not was a question for the triers of the facts.  Certain at all events it is that no report by Arflex as to assets or liabilities is in evidence from the plaintiff's files, though there is testimony that if any had been received, the files would show it.  Silent also

is the record as to a report from the defendant, or from any bank or credit agency speaking in his name.

" Every holder [of a negotiable instrument] is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course " (Neg. Instr. Law, § 98; Cons. Laws, ch. 38). The statute is declaratory of the rule at common law. " Where there is fraud, the presumption is that he who is guilty will part with the note for the purpose of enabling some third party to recover upon it, and such presumption operates against the holder, and it devolves upon him to show that he gave value for it " (*First Nat. Bank* v. *Green,* 43 N. Y. 298, 301, quoting *Bailey* v. *Bidwell,* 13 Mees. & Wels. 73.) Even proof of value will not avail unless coupled with proof that the value was given without notice of the fraud (*Canajoharie Nat. Bank* v. *Diefendorf,* 123 N. Y. 191, 205). The fact that the holder of the paper, or an officer or agent of the holder, is the only witness testifying as to the circumstances of the transfer, will not serve of itself to make a question for the jury (*American Exchange Nat. Bank* v. *N. Y. Belting & P. Co.,* 148 N. Y. 698, 704, 706, 708; *Hull* v. *Littauer,* 162 N. Y. 569; *Second Nat. Bank* v. *Weston,* 172 N. Y. 250, 258). The testimony may be so free from suspicious features, the transaction exhibited may be so fair upon its face, as to forbid conflicting inferences. If, however, the disclaimer of notice proceeds from an interested source and if there are circumstances in addition to arouse suspicion or incredulity, the jury and not the judge must say whether the burden of repelling notice has been adequately borne (*Canajoharie Nat. Bank* v. *Diefendorf, supra; Joy* v. *Diefendorf,* 130 N. Y. 6; *American Exchange Nat. Bank* v. *N. Y. Belting & P. Co., supra; Second Nat. Bank* v. *Weston, supra*).

We do not rule upon this record that the defendant has

proved the plaintiff to be a holder in bad faith. Our ruling is merely this, that the evidence for the plaintiff is not so barren of suspicious features as to command the conclusion that it has proved itself to be a holder in good faith (cf. *Seymour* v. *Mc Kinstry*, 106 N. Y. 230, 240). We are to remember the tie between the two corporations, the seller and the buyer; the dominating interest of the wrongdoer as a shareholder in each of them; the silence or forgetfulness of the titular agent of the buyer as to the details of the purchase; the intervention of the wrongdoer as an active intermediary in all the later stages of part payment and renewal; and the omission by the buyer of inquiries or precautions that are usual or certainly not uncommon upon the sale of business paper. Remembering these things, we have no alternative but to hold that the appraisal of their significance was matter for a jury.

The plaintiff makes an argument that even if it rightly failed to recover on the notes, there should have been a refusal to permit the defendant to recover on the counterclaim, and this for the reason that the counterclaim was based upon the theory of a rescission of the purchase, and that there was no evidence of a return or tender to the seller of benefits received. One answer to this argument suffices among a number available. The sufficient answer is that the defendant is not proved to have anything that he would be under a duty to return if the controversy were one between him and the seller. He received shares of stock, but he surrendered them to the corporation before discovery of the fraud in exchange for the delivery of certificates of indebtedness. These certificates are not shown to be negotiable. They were mere tokens of the Arflex debt, and the defendant, to rid himself of the bargain, was not required to return them. In addition to the certificates, he received some dividends on the shares, but these were less than a cash

payment made when the shares were purchased in addition to the notes ( *Kley* v. *Healy*, 127 N. Y. 555).

The charge as a whole sufficiently informed the jury that the burden was on the defendant to prove that the purchase had been procured by fraud, and that only if fraud had been made out was the burden cast upon the plaintiff to prove that the transfer of the notes was to a holder in due course.

The judgment should be affirmed with costs.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.