In the Matter of the Judicial Settlement of the Accounts of ANNA EHLERT and Another, Administratrices, etc., of CONRAD HAMMER, SR., Deceased, Respondents.*

THE MARINE TRUST COMPANY OF BUFFALO, Appellant.

Fourth Department, January 4, 1933.

* Revg. 144 Misc. 39; aff'd., 261 N. Y. 677.

*Daniel J. Kenefick* [*Thomas R. Wheeler* and *Fritz Fernow* of counsel], for the appellant.

*George C. Riley,* for the respondents.

SEARS, P. J.   In this discovery proceeding, brought under the provisions of sections 205 and 206 of the Surrogate's Court Act, the administrators have been granted a decree to the effect that the administrators are entitled to a credit with the Marine Trust Company of Buffalo in the sum of $27,346.61, with interest from April 1, 1932; that the administrators recover such amount and have execution therefor.

The material facts are these: Conrad Hammer, Sr., a resident of the city of Buffalo, died on the 9th day of March, 1915.   His will was admitted to probate in the Surrogate's Court of Erie county two weeks later, and letters testamentary were thereupon issued to his widow, Anna M. Hammer, his sons, John and Conrad, Jr., and Robert F. Schelling.   The last-named executor died December 17, 1916.   In the will the testator appointed his executors already named trustees and gave all his property, real and personal, to his executors with direction to pay to his wife the whole net income and profit of his entire estate during her life, and upon her death to distribute his estate, including income which might have accumulated and not been paid over to his wife, among his children.   Funds of the estate were deposited by the executors with the Buffalo Trust Company of Buffalo subject to withdrawal upon the check of John Hammer, executor, countersigned by Conrad Hammer, Jr., executor. Anna M. Hammer filed with the Buffalo Trust Company a consent in writing to this arrangement.   By April, 1922, the estate's funds in this account with the Buffalo Trust Company had grown to an amount of over $30,000.   On the 10th day of April, 1922, Conrad Hammer, Jr., went to the banking office of the appellant, the Marine Trust Company, taking with him a check for the sum of $20,000, dated on that day, payable to the order of cash, signed John Hammer, executor, and countersigned Conrad Hammer, Jr., executor.   He there talked with one of the vice-presidents of the Marine Trust Company and arranged to deposit $10,000 of the sum represented by the check with the Marine Trust Company, and to receive a $10,000 check to be issued by the Marine Trust Company to his order as executor which he was to deposit in another bank.   The arrangement was carried out.   Conrad Hammer, Jr., signed the usual signature card referable to the account which he

then opened. On the card is written after the word "Name," the words "Hammer, Estate of Conrad, Sr.," and after the printed word "Address," the following, "56 Johnson St.," and under the printed words "Authorized signature," is written the name "Conrad Hammer, Jr., Executor." The $10,000 check which the Marine Trust Company gave to Conrad Hammer, Jr., was signed by its vice-president, made payable to the order of "Conrad Hammer, Jr., Executor," and drawn on the Federal Reserve Bank of New York. Conrad Hammer, Jr., on the same day took this check to the Citizens Trust Company and opened an account with it in the name of the Estate of Conrad Hammer, Sr., subject to the order of Conrad Hammer, Jr., executor. Conrad Hammer, Jr., signed a signature card for this account similar to that which he had signed for the Marine Trust Company. Both of these accounts were special interest bearing accounts. Before any checks mentioned in this opinion were drawn on the Citizens Trust Company account, the Citizens Trust Company was merged with the Marine Trust Company. Conrad Hammer, Jr., later drew three checks upon the Marine Trust Company account and four checks upon the Citizens Trust Company account, which are important in this case. Two of these checks on the Marine Trust Company account, amounting together to $9,500, and three of the checks on the Citizens Trust Company account, aggregating $9,500, were drawn to the order of Frank A. Heisz. The earliest of these five checks was dated August 13, 1924, and the latest November 5, 1924. A check for $500, payable to cash, was also drawn by Conrad Hammer, Jr., on the Marine Trust Company account on November 16, 1925, on which he was paid the cash by the Marine Trust Company. On the 21st day of November, 1925, Conrad Hammer, Jr., drew a check on the Citizens Trust Company account to the order of cash in the sum of $1,000, which check was paid by the Marine Trust Company to Conrad Hammer, Jr. Each of the checks drawn to the order of Heisz was certified by the Marine Trust Company on the day it was dated. Each of the five checks drawn to the order of Heisz bear indorsements on their back as follows: "Frank A. Heisz, Conrad Hammer, Jr." Presumably the name of Frank A. Heisz was written by Conrad Hammer, Jr. It certainly was not written by Frank A. Heisz, as he had never seen any of these checks until they were shown to him upon the witness stand. He knew nothing of these checks and, at the times that they were drawn, had no business relations with Conrad Hammer, Jr., or the Conrad Hammer, Sr., estate. Each of these Heisz checks so indorsed was deposited on the day of its date by Conrad Hammer, Jr., in his personal account with the Buffalo Trust Company and

was paid to the Buffalo Trust Company by the Marine Trust Company through the Buffalo Clearing House. The personal account of Conrad Hammer, Jr., with the Buffalo Trust Company also shows deposits corresponding to the amount of the two " cash " checks on the days when these checks were paid by the Marine Trust Company to Conrad Hammer, Jr. Anna Maria Hammer died January 29, 1927. Conrad Hammer, Jr., died March 20, 1927. Among his effects after his death was found a paper dated November 5, 1924, in the following words: " On demand I promise to pay to C. Hammer, Sr. Estate, Nineteen Thousand Dollars with interest. Conrad Hammer, Jr." Before his death Conrad Hammer, Jr., had withdrawn all his deposits in the Buffalo Trust Company account and closed his personal account. None of the withdrawals from this account had been for the benefit of his father's estate. There is no contention, however, that the Buffalo Trust Company, or the Marine Trust Company, with which the Buffalo Trust Company was merged on December 23, 1925, had any notice of wrongdoing or misapplication of funds by Conrad Hammer, Jr., in the drawing out of his funds from his personal account. It was only after Conrad Hammer, Jr.'s death that the misappropriation of these funds was discovered. After the death of Conrad Hammer, Jr., John Hammer, the sole surviving executor, resigned as executor and letters of administration with the will annexed were issued by the Surrogate's Court of Erie county on October 1, 1927, to the administrators, parties respondent on this appeal. This proceeding was commenced by the service of a petition and citation or order on the Marine Trust Company on the 21st day of March, 1932.

It is the contention of the administrators that the Marine Trust Company had no right to honor checks upon the deposits with the Marine Trust Company and in the Citizens Trust Company account (after the merger of the Citizens Trust Company with the Marine Trust Company), inasmuch as the deposits had been made to the knowledge of the Marine Trust Company for the benefit of the estate of Conrad Hammer, Sr., and inasmuch as Conrad Hammer, Jr., was only one of three living executors and trustees of that estate. The existence of another executor, namely, John Hammer, had been brought to the attention of the Marine Trust Company by the form of the $20,000 check which John Hammer had signed as executor, and from the proceeds of which the accounts with the Marine Trust Company and the Citizens Trust Company had been opened. The administrators further argue that the Marine Trust Company was not justified in paying the five Heisz checks because, as they claim, the signature of Heisz was forged. In consequence of the illegality of these acts, it is the position of

the administrators that the Marine Trust Company must respond to the administrators and deliver over to them the value of the property which the Marine Trust Company received from the hands of Conrad Hammer, Jr.

The Marine Trust Company contends on the other hand that the Surrogate's Court is without jurisdiction to grant relief in this case because, as it claims, the proceeding amounts to nothing but an attempt to collect a debt. Further, it is the position of the Marine Trust Company that it was justified in honoring checks signed by Conrad Hammer, Jr., alone, as executor, and lastly that it was fully justified in paying the Heisz checks bearing the indorsement of Conrad Hammer, Jr., following the name of Heisz.

The challenge to the jurisdiction of the court is upon the theory that the administrators in this proceeding are merely attempting to collect a debt which they claim to be due to the estate from the appellant, the Marine Trust Company, and that the jurisdiction of the Surrogate's Court, even under the amended provisions of sections 205 and 206 of the Surrogate's Court Act, has not been broadened to such an extent as to give the Surrogate's Court in a discovery proceeding power to collect a debt; but that its jurisdiction in this respect is still confined to securing the delivery to the executor of specific personal property belonging to the estate, or securing the delivery or payment to the executor of the proceeds or value of such property, if it has been disposed of. Before the adoption of the amendments in 1924 (Laws of 1924, chap. 100) it was only possible in a proceeding under these sections to obtain possession of specific money or personal property which had belonged to the deceased in his lifetime. (*Matter of Heinze*, 224 N. Y. 1.) Consequently, if such property had been exchanged for other property or sold, the Surrogate's Court had no power to direct the value of such property to be paid to the executor or the proceeds to be turned over to him. (*Matter of Hyams*, 237 N. Y. 211.) These limitations were removed in 1924 by the amendments so that property coming into the possession of a person after the death of the deceased may be the subject of a discovery proceeding, and a person in possession of property belonging to an estate who disposes of it may be required to deliver to the executor or pay over to him the proceeds or value of such property. (*Matter of Wilson*, 252 N. Y. 155.)

As we read the amended sections, however, the inquiry and the resulting decree must still refer to specific personal property or its proceeds or value. The property may be intangible, such as a right to a bank account. (*Matter of Akin*, 248 N. Y. 202.) But we find nothing to indicate that by means of such a proceeding

an executor may enforce the collection of a simple debt. (*Matter of White,* 119 App. Div. 140; *Matter of Brazil,* 219 id. 594; *Matter of Thomas,* 235 id. 450.) (See 2 Jessup-Redfield Law & Prac. in Surr. Court [3d ed.], § 711.) A deposit in a banking institution results in an indebtedness of the banking institution to the depositor. There is no specific money held for the depositor by the bank. (*People* v. *Mechanics & Traders' Savings Institute,* 92 N. Y. 7; *People ex rel. Bridgeport Savings Bank* v. *Barker,* 154 id. 128.) We have not overlooked the opinion in *Matter of Welton* (141 Misc. 674) which elaborately discusses section 40, subdivision 4, of the Surrogate's Court Act. We feel that the learned surrogate in the course of discussion assigns to sections 205 and 206 of the Surrogate's Court Act a broader application than the language of the sections warrants. If, therefore, the decree in this proceeding is based upon the theory of recovering from the appellant, the Marine Trust Company, a deposit which the estate had with the appellant, the decree is beyond the jurisdiction of the court. If, however, the decree is based on the theory that the account or deposit with the appellant trust company is but the avails or proceeds of specific property belonging to the estate which the executors and administrators had the right to recover, then the decree is within the jurisdiction of the court. In our opinion the decree in this case is based upon the former rather than the latter theory and is beyond the jurisdiction of the court. However, rather than to put our decision on this jurisdictional question, we prefer to determine the controversy upon the merits.

The check for $20,000 payable to cash was signed, as stated above, by Conrad Hammer, Jr., and his brother John as executors. This put the funds represented by the check in the hands of the bearer of the check, who was Conrad. Without question, the Buffalo Trust Company, on which the check was drawn, was required to pay this check as it did. (*Whiting* v. *Hudson Trust Co.,* 234 N. Y. 394; *Clarke* v. *Public Nat. Bank & Trust Co.,* 259 id. 285.) The administrators' claim arises out of the transactions beginning with the deposit of the $10,000 in the Marine Trust Company in the name of the estate, with provision that Conrad Hammer, Jr., acting alone, might withdraw funds from the account, and with the issuance by the Marine Trust Company to Conrad Hammer, Jr., of the check for $10,000, payable to his order, which he deposited in the Citizens Trust Company. It is the contention in this respect that the Marine Trust Company and the Citizens Trust Company at the time that these transactions took place had notice that the funds were estate funds and that they were required, therefore, to make investigation as to the right of Conrad

Hammer, Jr., to deal with these funds without the co-operation of the other executors. The Marine Trust Company is charged with notice by reason of the form of the $20,000 check which Conrad Hammer, Jr., brought to it, that Conrad Hammer, Jr., was not the sole executor of his father's estate. The administrators contend that, because of this notice, the Marine Trust Company was not justified in drawing the $10,000 check to his sole order or in accepting the deposit subject to his right to draw without the accompanying signatures of his coexecutors, or in paying the various checks which he afterwards drew against the accounts. These claims run counter to established principles of law. The general rule in respect to executors is that acts done by one in reference to the administration of an estate are deemed the acts of all. (*Barry* v. *Lambert*, 98 N. Y. 300; *Edmonds* v. *Crenshaw*, 39 U. S. 166; *Pearse* v. *National Lead Co.*, 162 App. Div. 766; 7 C. J. 677.) The drawing of a check by one of several executors upon an estate deposit is but a particular instance of the exercise of power under the general rule. There doubtless are cases where a special arrangement is made with the depository and the general rule is not applicable. Here there was no such special arrangement. In fact the other executors, by their acts, put the funds in question under the control of Conrad Hammer, Jr. The executor Anna had expressly consented to the control of the account in the Buffalo Trust Company by Conrad Hammer, Jr., and John Hammer, the other executors. John Hammer, by signing the $20,000 check to the order of cash, expressly consented to the control by Conrad Hammer, Jr., of the money represented by the check. The deposit of $10,000 in the Marine Trust Company and $10,000 in the Citizens Trust Company was in accordance with the express agreement of John Hammer with Conrad Hammer, Jr., although it appears in the record that it was John Hammer's intention that both executors' names should be given to the bank as executors of the estate. Under the authorities, the Marine Trust Company was justified in receiving the deposit subject to the control of one executor, Conrad Hammer, Jr., even though its officers knew that he was not the sole executor and was justified in paying checks drawn on this account by Conrad Hammer, Jr., alone.

The administrators urge, however, that this principle of the right of one executor to control funds of an estate is not applicable here because the executors were in fact also trustees and the rule is not effective as to trustees. In respect to deposits of the funds of an express trust, all the trustees must sign the withdrawal checks. (*Sinclair* v. *Jackson*, 8 Cow. 543; *Brennan* v. *Willson*, 71 N. Y. 502; *Brown* v. *Doherty*, 185 id. 383.) (See 7 C. J. 677.) These executors

were, under the terms of the will, also trustees. Their duties as executors and as trustees were coincident and to some extent intermingled. We have found no authority sustaining a contention that in such cases the rule in respect to trustees is applicable. The check brought to the Marine Trust Company was signed by the executors, using such designation. All checks thereafter drawn by Conrad Hammer, Jr., were drawn by him with the like designation after his name. If inquiry had been made by the Marine Trust Company at the Surrogate's Court, it would have learned that letters testamentary had been issued to the four persons named in the will as executors and that they had not accounted as such, and that there was no decree of the Surrogate's Court setting up a trust, and the executors had not been discharged in any way. We need not determine what inquiry, if any, should have been made under such circumstances. All reasonable inquiry would have shown that Anna, John and Conrad Hammer, Jr., were acting as executors and were empowered to act as such. With this information the Marine Trust Company would have been justified in receiving deposits and giving the $10,000 check, and in paying checks drawn by Conrad Hammer, Jr., executor, as it in fact did. In these respects no duty owed to the other executors or to those interested in the estate was violated by the appellant.

The administrators further contend that even though Conrad Hammer, Jr., was, in general, authorized to draw upon the accounts, the Marine Trust Company paid the Heisz checks, aggregating $19,000, upon forged indorsements and consequently are not entitled to a credit for the amount of such checks. In the sense that Frank A. Heisz did not sign his name on the back of these checks, the indorsements were forged. As stated in *Trust Company of America* v. *Hamilton Bank* (127 App. Div. 515, 521), it is at least convenient to speak of these indorsements as forged. Nevertheless, in our opinion the banks were authorized to charge the estate accounts with the amount of these checks. Concededly, the maker of the checks, Conrad Hammer, Jr., did not intend that the payee of the check, Frank A. Heisz, should ever become possessed of the checks. There was no intention on the part of Conrad Hammer, Jr., to deliver the check to Heisz or for Heisz' benefit, nor was Heisz entitled to any money from the estate. Conrad Hammer, Jr., certainly used the name of Heisz as the nominal payee in order to facilitate a plan to obtain possession of these funds without making the intention perfectly obvious. He could have drawn a check to cash or to bearer, or to himself by name, and have received the money from the Marine Trust Company thereon. Following the general practice of wrongdoers, he took

a more devious course and made the check to the order of a nominal payee and then presumably himself indorsed it in the name of the nominal payee. A check payable to a fictitious person is payable to bearer. (Neg. Inst. Law, § 28.) A check payable to one to whom the maker does not intend the check to go is payable to a fictitious person within the meaning of the statute. (*Phillips* v. *Mercantile National Bank*, 140 N. Y. 556; *Trust Company of America* v. *Hamilton Bank, supra; Norton* v. *City Bank & Trust Co.*, 294 Fed. 839.) In this case the intention of Conrad Hammer, Jr., in drawing these checks to the order of Heisz was not to give Heisz the property represented thereby, but to enable himself to get possession of the funds. The checks were, therefore, drawn to the order of a fictitious person and as such payable to bearer. Furthermore, by means of these checks, the credit was transferred from the account in the name of the estate of Conrad Hammer, Sr., with the Marine Trust Company to a personal account of Conrad Hammer, Jr., with the Buffalo Trust Company, just as Conrad Hammer, Jr., intended it to be transferred, and just as, so far as the Marine Trust Company and the Buffalo Trust Company were concerned, Conrad, Jr., had the right to transfer it. An executor, despite the provisions of section 231 of the Surrogate's Court Act, may still draw money from an account of which he is a fiduciary and place the money in the same bank in his own personal account and draw therefrom freely until such time as the bank has notice or knowledge that he is diverting the trust funds to other than the trust's affairs. (*Clarke* v. *Public Nat. Bank & Trust Co., supra; Manufacturers Trust Co.* v. *U. S. Mortgage & Trust Co.*, 244 N. Y. 550; *Bischoff* v. *Yorkville Bank*, 218 id. 106.) The case is distinguishable from such cases as *National Surety Co.* v. *Manhattan Co.* (252 N. Y. 247); *Prudential Ins. Co.* v. *National Bank of Commerce* (227 id. 510), and *Anglo-South Am. Bank, Ltd.,* v. *National City Bank* (161 App. Div. 268), where the drawer of a check has, by fraud, been induced to designate as payee some person whose indorsement is later forged. In such circumstances the check is made by the intention of its drawer to a real person. The intention of the agent or other person obtaining the check directly or indirectly does not control the intention of the maker. In our case Conrad Hammer, Jr., was not even an agent; he was a fiduciary to be sure, but he was the actual owner of the deposit. The estate of Conrad Hammer, Sr., was not a separate person, individual or artificial. An estate has no juridical personality. The executors are the owners of the estate property. (*Whiting* v. *Hudson Trust Co., supra.*) The intention of the executor with power to draw, deter-

mines the character of the payee as real or fictitious. We find, therefore, under the circumstances disclosed no breach of obligation on the part of the appellant, the Marine Trust Company, and no cause of action in favor of the administrators against the appellant, the Marine Trust Company, by reason of the facts proved.

Other points argued in the appeal have been considered, but they are unimportant in view of our conclusion as to the questions discussed.

The decree should be reversed on the law, with costs payable out of the estate, and the petition dismissed, with costs payable out of the estate.

All concur.

Decree reversed on the law, with costs to the appellant payable out of the estate, and petition dismissed, with costs payable out of the estate.