MANUFACTURERS & TRADERS TRUST COMPANY, Appellant, *v.*
SAMUEL SAPOWITCH, as Administrator of the Estate of GEORGE
SIMON (also Known as GEORGE SHUMAN), Deceased, et al.,
Defendants, and FIDELITY AND CASUALTY COMPANY OF NEW
YORK et al., Interveners, Respondents.

Argued November 19, 1946; decided February 27, 1947.

*Hugh McM. Russ, Laurence R. Goodyear* and *Francis J. Maloney* for appellant. I. Plaintiff is, as a matter of law, a holder in due course of the bonds pledged by the borrower. (*Murray* v. *Lardner*, 2 Wall. [U. S.] 110; *Knox* v. *Eden Musee Co.*, 148 N. Y. 441; *Cheever* v, *Pittsburgh, Chenango & Lake Erie R. R. Co.*, 150 N. Y. 59; *Goetz* v. *Bank of Kansas City*, 119 U. S. 551; *Springs* v. *Hanover Nat. Bank*, 209 N. Y. 224; *Carlisle* v. *Norris*, 215 N. Y. 400; *Second Nat. Bank of Morgantown* v. *Weston*, 172 N. Y. 250; *Manhattan Sav. Inst.* v. *New York Nat. Exch. Bank*, 170 N. Y. 58; *Wiese* v. *Corn Exch. Bank Trust Co.*, 240 App. Div. 198, 265 N. Y. 582; *Dalton* v. *Hamilton Hotel Operating Co.*, 242 N. Y. 481; *Hazzard* v. *Chase Nat. Bank of New York*, 159 Misc. 57, 257 App. Div. 950, 282 N. Y. 652, 311 U. S. 708.) II. The evidence does not reveal any connection between the borrower's role as a professional gambler and the defect in his title to the bonds. This connection must exist if a holder is to be affected by constructive notice. (*Manhattan Sav. Inst.* v. *New York Nat. Exch. Bank*, 170 N. Y. 58; *Wilson* v. *Metropolitan Elevated Ry. Co.*, 120 N. Y. 145; *Dutchess County Mut. Ins. Co.* v. *Hachfield*, 73 N. Y. 226; *Cowing* v. *Altman*, 71 N. Y. 435; *Birdsall* v. *Russell*, 29 N. Y. 220; *Second Nat. Bank of Morgantown* v. *Weston*, 172 N. Y. 250.) III. Plaintiff's conduct was in conformity with ordinary banking customs and usages.

*Mark N. Turner* and *Cleveland Pond* for respondents. I. There was a question of fact as to whether the plaintiff was a holder in due course of the bonds. (*Sleeper* v. *Middlesworth*, 4 Den. 431; *Watts* v. *Malatesta*, 262 N. Y. 80; *Meech* v. *Stoner*, 19 N. Y. 26; *Chapin* v. *Austin*, 165 Misc. 414; *Benisch* v. *Mandelbaum*, 160 App. Div. 206; *Grace* v. *Corn Exch. Bank Trust Co.*, 287 N. Y. 94; *Ward* v. *City Trust Co.*, 192 N. Y. 61; *Rochester & Charlotte Turnpike Road Co.* v. *Paviour*, 164 N. Y. 281; *Kittredge* v. *Grannis*, 244 N. Y. 168; *Bank of United States* v. *Cooper-Bessemer Corp.*, 146 Misc. 20; *Soma* v. *Handrulis*, 277 **N. Y.**

223; *Hoberg* v. *Sofranscy,* 217 App. Div. 546.) II. The standard or test of good faith is peculiarly a question for the jury. (*State Bank of Binghamton* v. *Bache,* 162 Misc. 128; *Hoberg* v. *Sofranscy,* 217 App. Div. 546; *Karpas* v. *Bandler,* 218 App. Div. 418; *New York Bankers, Inc.,* v. *Duncan,* 257 N. Y. 160; *Harter* v. *Peoples Bank of Buffalo,* 221 App. Div. 122; *Neinken* v. *Brill,* 251 App. Div. 730; *United States Fidelity & Guaranty Co.* v. *Leon,* 165 Misc. 549; *Canajoharie Nat. Bank* v. *Diefendorf,* 123 N. Y. 191.)

THACHER, J. This action was brought by Manufacturers and Traders Trust Company of Buffalo to foreclose a lien on six $1,000 negotiable bonds of the Narragansett Electric Company and twenty negotiable bonds of the same denomination of the City of Havre de Grace, Maryland, received by the trust company from George Shuman as collateral security for loans aggregating $22,600. Shuman was not a holder in due course of the Narragansett bonds, which were in fact stolen from the firm of Drysdale & Company, nor of the Havre de Grace bonds, which were stolen from the firm of Dominick & Dominick.

Pursuant to stipulation, issues were framed and tried by a jury, whose findings it was agreed should have the same effect as a general verdict. The questions framed and submitted to the jury were all answered in the negative. They read as follows: " 1. Did the Plaintiff act in good faith in accepting from George Shuman the six Narragansett Bonds as collateral security for a loan of $4400.00 on June 6, 1941?

" 2. Did the Plaintiff act in good faith in making a further loan in the sum of $1600.00 on July 30, 1941, on the Narragansett Bonds pledged by Shuman on June 6, 1941?

" 3. Did the Plaintiff act in good faith in accepting ten Havre de Grace Bonds as collateral security for an additional loan to George Shuman of $7000.00 on September 10, 1941?

" 4. Did the Plaintiff act in good faith in accepting ten additional Havre de Grace Bonds as collateral security for an additional loan of $7000.00 to George Shuman on September 20, 1941? "

This verdict was set aside. The jury was directed to answer each of the questions in the affirmative and the verdict was recorded accordingly. Judgment followed foreclosing plain-

tiff's lien upon the bonds. The Appellate Division reversed this judgment, reinstated the verdict and directed judgment for the intervening defendants, who had insured the two firms against theft of the bonds. Defendants' only claim is that plaintiff did not take the bonds in good faith and had notice of the defect in Shuman's title. There is no suggestion that the plaintiff had knowledge that the bonds were stolen, and the controlling question is whether facts of such a character were known to its officers that a jury might find that they accepted the bonds in bad faith, although without actual knowledge that they had been stolen from the rightful owners. (Negotiable Instruments Law, § 95.)

The requirement of the statute is good faith, and bad faith is not mere carelessness. It is nothing less than guilty knowledge or willful ignorance. (*Kittredge* v. *Grannis*, 244 N. Y. 168, 178–179; *Cheever* v. *Pittsburgh, S. & L. E. R. R. Co.*, 150 N. Y. 59, 65–66; *Chapman* v. *Rose*, 56 N. Y. 137, 140.) There is no claim of guilty knowledge in this case; at most it is argued that the knowledge of two of the officers that Shuman in 1930 and 1931 was the proprietor of a sumptuous night club where, during the period of national prohibition, patrons were furnished with fine food, wines and liquors and high-class entertainment and were in addition given access to a gambling establishment on an upper floor, was a fact which in the absence of further inquiry made the acceptance from him of negotiable bonds as collateral for loans in 1941 an act of bad faith.

The case most heavily relied upon by respondents is *Canajoharie Nat. Bank* v. *Diefendorf* (123 N. Y. 191) where, as this court declared in *American Exchange Nat. Bank* v. *New York Belting & Packing Co.* (148 N. Y. 698, 706) the circumstances attending the transaction of the purchase were deemed to be so strange and unusual, that it could not be said, as matter of law, that the note had been acquired in good faith. These circumstances indicated connivance at the wrong or at least a willful ignorance lest the wrong be discovered. One of the circumstances upon which this conclusion was predicated was the purchase of the notes at excessive and usurious discounts, so excessive, indeed, as to warrant the inference of bad faith (*Second Nat. Bank of Morgantown* v. *Weston*, 172 N. Y. 250,

257), and that was but a part of the strange and unusual transaction.

One who purchases commercial paper for full value before maturity, without notice of any equities between the original parties, or of any defect of title, is to be deemed a bona fide holder. He is not bound at his peril to be upon the alert for circumstances which might possibly excite the suspicions of wary vigilance. He does not owe to the party who puts negotiable paper afloat the duty of active inquiry, to avert the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by speculations in regard to the purchaser's diligence or negligence (*Magee* v. *Badger,* 34 N. Y. 247, 249). These principles have often been restated in varying forms and have never been questioned in the decisions of this court (*Soma* v. *Handrulis,* 277 N. Y. 223, 233; *New York Bankers, Inc.,* v. *Duncan,* 257 N. Y. 160, 165; *Kittredge* v. *Grannis, supra; Kittredge* v. *Grannis,* 236 N. Y. 375, 388–389; *Second Nat. Bank of Morgantown* v. *Weston, supra,* pp. 254–255; *Second Nat. Bank of Elmira* v. *Weston,* 161 N. Y. 520; *Cheever* v. *Pittsburgh, S. & L. E. R. R. Co., supra; Knox* v. *Eden Musee Americain Co.,* 148 N. Y. 441, 454; *American Exchange Nat. Bank* v. *New York Belting & Packing Co., supra,* pp. 704, 706; *Joy* v. *Diefendorf,* 130 N. Y. 6). Nor are the rights of a purchaser to be affected by constructive notice, unless it clearly appear that the inquiry suggested by the facts disclosed at the time of the purchase would if fairly pursued result in the discovery of the defect existing but hidden at the time (*Birdsall* v. *Russell,* 29 N. Y. 220, 250).

Thus in the case at bar the knowledge that the maker of the note had ten years before been engaged in operating a gambling establishment at the most would suggest inquiry as to whether he had received the bonds in payment of a gambling debt. That was not the fact; all parties agreed that the bonds were stolen. The essential connection between the prompting facts and the defect of title was absent in this case (*Manhattan Sav. Inst.* v. *New York Nat. Exch. Bank,* 170 N. Y. 58, 68).

In other States the prevailing rule appears to be that the mere fact that the borrower is a gambler is not, standing alone, sufficient to impugn the good faith of a bank which accepts from him a negotiable instrument paying fair value. (*Mitchell* v

*Catchings,* 23 F. 710; *Wilson* v. *National Fowler Bank,* 47 Ind. App. 689.) In *Standard Acceptance Corp.* v. *Chapin* (277 Mass. 278) it was held that information that the seller of a negotiable instrument is unscrupulous and has been concerned in shady or illegal transactions is not enough of itself to render the purchaser from him one who does not take in due course. Thus the purchase of negotiable paper from those engaged in the illegal sale of liquor is not in itself an act of bad faith, nor is the purchaser bound to inquire as to the consideration given for the note (*Estabrook* v. *Boyle,* 1 Allen [Mass.] 412; *Bottomley* v. *Goldsmith,* 36 Mich. 27).

We find in the record of this case no evidence of the plaintiff's bad faith in accepting the bonds from Shuman as collateral security for loans at the usual rate of interest and without discount. Accordingly, the jury's determination of the question submitted was without evidence to support it and this determination was properly set aside.

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and FULD, JJ., concur.

Judgment accordingly. [See 296 N. Y. 998.]