ELTON W. HALL, Respondent, *v.* BANK OF BLASDELL, Appellant.

Argued December 1, 1953; decided March 4, 1954.

*John G. Wick* for appellant. I. The payees herein were never, as a matter of law, the owners of the check in question. (*Wolfin v. Security Bank of N. Y.*, 170 App. Div. 519, 218 N. Y. 709; *Worth v. Case*, 42 N. Y. 362.) II. Plaintiff is not a holder in due course. (*Seaboard Nat. Bank v. Bank of America*, 193 N. Y. 26; *Shipman v. Bank of State of N. Y.*, 126 N. Y. 318; *Cohen v. Lincoln Sav. Bank*, 275 N. Y. 399.) III. Defendant is not precluded from setting up the forgery or want of authority. (*Mercantile Nat. Bank of N. Y. v. Silverman*, 148 App. Div. 1, 210 N. Y. 567.) IV. The finding of the trial court that defendant's check was payable to bearer was erroneous. (*Irving Nat. Bank v. Alley*, 79 N. Y. 536; *Turnbull v. Bowyer*, 40 N. Y. 456; *Shipman v. Bank of State of N. Y.*, 126 N. Y. 318.)

*Lee Towne Adams* for respondent. I. The Gallegoses were the owners of the check in question and gave value for it. (*Newman v. Frost*, 52 N. Y. 422; *Rice v. Mather*, 3 Wend. 62; *Dowe v. Schutt*, 2 Denio 621; *Rice v. Grange*, 131 N. Y. 149.) II. Schneider Motors never had any interest in the cashier's check, and, therefore, its indorsement was not necessary to pass

title to the check. (*Grannis* v. *Stevens,* 216 N. Y. 583; *Dollfus* v. *Frosch,* 1 Denio 367; *Dugan* v. *United States,* 3 Wheat [U. S.] 172; *Chautauqua Co. Bank* v. *Davis,* 21 Wend. 584.) III. The legal effect of the affixing of the signature " Schneider Motors " to the back of the check was to make it payable to the bearer. (*Phillips* v. *Mercantile Nat. Bank,* 140 N. Y. 556; *Commercial Bank of Albany* v. *Hughes,* 17 Wend. 94; *Coggill* v. *American Exch. Bank,* 1 N. Y. 113; *Shipman* v. *Bank of State of N. Y.,* 126 N. Y. 318; *Matter of Hammer,* 237 App. Div. 497, 261 N. Y. 677.) IV. It would be unjust to allow the bank to be relieved from making payment on this check. V. Plaintiff was a holder in due course. (*Cohen* v. *Lincoln Sav. Bank,* 275 N. Y. 399.)

FULD, J. On July 25, 1949, Thomas and Betty Gallegos, husband and wife, asked defendant bank for a loan of $1,000 in order to buy a certain automobile from Schneider Motors of Hamburg, New York. Defendant gave them a cashier's check for $1,000, made payable " to the order of Betty J & Thomas Gallegos ", and, in return, took a note for the same amount and a chattel mortgage on the specific auto that was to be purchased. To assure itself that the check would be used to effect the purchase of the car, the bank, before delivering the check to the payees, had them indorse it " to the order of Schneider Motors, Hamburg, N. Y."

When the Gallegoses left the bank, they went, as they had said they would, to Schneider Motors. However, Alvin Snyder, a partner in the firm, refused to accept the check because of the recital typed on its reverse side by the bank that it was " Payment in full covering one 1948 NASH 4 door Sedan." It appears that the Gallegoses had not told the bank the truth, for they had purchased the 4-door sedan described on the check from Schneider Motors sometime before and had actually paid everything due upon it except the sum of $200. It also appears that, in connection with Schneider's refinancing of sales on credit, Commercial Credit Company had taken a chattel mortgage on the Gallegoses' car as security. Reading between the lines, Snyder apparently believed that, by taking and later indorsing the check, he might somehow or other impair the finance company's security. In any event, Snyder did not accept the check; after examining it, he returned it to Thomas Gallegos.

Several days later, on July 30, his wife went to plaintiff's grocery store in Forestville — where the Gallegoses had formerly lived — and asked John Hall, plaintiff's father, who was then in charge of the store, to cash the $1,000 check. At that time, it contained the following indorsements:

" Pay to the order of
Schneider Motors, Hamburg, N. Y.
Betty J. Gallegos
Thomas Gallegos
Payment in full covering one
1948 NASH 4 door Sedan
Motor # RE 91798 Ser # K 231878

| Schneider | Motors |
|---|---|
| Alvin | Hamburg |
| Schneider [*sic*] | N. Y. |

Mr. Joseph
Nader "

Schneider Motors' name had been written without its authorization, and Alvin Snyder had not signed either his name or the company's on the check, but those facts were not known to the Halls. After looking the instrument over, and after Mrs. Gallegos had signed her name below that of Nader, John Hall cashed the check: he gave her $880 in currency and $20 in groceries and used the remaining $100 to settle a grocery bill long overdue. Plaintiff deposited the check in his own bank, but defendant refused to honor or pay it.

The critical question for decision is, of course, whether plaintiff is a holder in due course. If, as the courts below have held, he is, then, the fact that the payees may have acted fraudulently or in bad faith toward defendant bank becomes immaterial (Negotiable Instruments Law, §§ 35, 96).

In reaching its decision, the trial court found as a fact — and the Appellate Division affirmed the finding — that plaintiff " had no notice of any infirmity in the instrument or defect in the title of the person negotiating it " (Negotiable Instruments Law, § 91). The Gallegoses' possession of the check after it had been " indorsed " by Schneider may, it is true, have appeared suspicious, but the existence of merely suspicious circumstances does not, without more, amount to notice of an infirmity or defect.

To constitute such notice, the person to whom the instrument is negotiated " must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith " (Negotiable Instruments Law, § 95). As the statute itself makes evident, its requirement " is good faith, and bad faith is not mere carelessness. It is nothing less than guilty knowledge or willful ignorance. * , * * One who purchases commercial paper for full value * * * is not bound at his peril to be upon the alert for circumstances which might possibly excite the suspicions of wary vigilance. He does not owe to the party who puts negotiable paper afloat the duty of active inquiry, to avert the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by speculations in regard to the purchaser's diligence or negligence ". (*Manufacturers & Traders Trust Co.* v. *Sapowitch*, 296 N. Y. 226, 229–230; see, also, *Cheever* v. *Pittsburgh, Chenango & Lake Erie R. R. Co.*, 150 N. Y. 59; *Chapman* v. *Rose*, 56 N. Y. 137, 140; *Goodman* v. *Simonds*, 20 How. [U. S.] 343; *Goodman* v. *Harvey*, 4 Ad. & El. 870.)

Applying the test thus laid down by statute and decision, it is manifest that the courts below were fully justified in concluding that plaintiff took the check in good faith and without notice of any infirmity or defect, and, indeed, defendant does not now dispute that. It does, however, contend that plaintiff is not a holder of the check, much less a holder in due course. In support of its contention, it asserts, first, that, since the check was not accepted or received by Schneider, it never became a negotiable instrument; second, that the unauthorized signing of Schneider's name was a forgery; and, third, that, even if the Gallegoses did have the power to indorse and deliver the check to plaintiff, they, nevertheless, failed to do so.

Defendant's first point is that the Gallegoses had no power to negotiate the check because they received it solely for the purpose of transmitting it to Schneider. According to defendant, the only delivery effected was a constructive one to Schneider, which, on the latter's refusal to accept it, failed. A delivery may, of course, be constructive (Negotiable Instruments Law, § 2; see

*Worth* v. *Case,* 42 N. Y. 362, 367; *Wolfin* v. *Security Bank of N. Y.,* 170 App. Div. 519, affd. 218 N. Y. 709), but that was not here the case. Indeed, in order to say that there was such a delivery to Schneider, it would be necessary to find — contrary to the fact — that defendant regarded the payees as mere messengers, having no interest in the check, and intended to make Schneider, to which it owed nothing, the " real owner." (See *Wolfin* v. *Security Bank of N. Y., supra,* 170 App. Div. 519, 522, affd. 218 N. Y. 709.) There was no indebtedness or other obligation to Schneider to warrant the conclusion that the drawer, by handing the check to the Gallegoses, intended to confer on Schneider a proprietary interest in it. (Cf. *Wolfin* v. *Security Bank of N. Y., supra,* 170 App. Div. 519, affd. 218 N. Y. 709.) While the bank may have delivered the check to the payees on the condition that they use it only for the purchase of a car (Negotiable Instruments Law, § 35), the existence of such a condition did not, and could not, change the actual delivery to one party into a constructive delivery to the other.

By making the Gallegoses the payees of the check and delivering it to them, defendant bank empowered them, so far as an innocent purchaser was concerned, to negotiate it as they saw fit. It is of no consequence that, before delivering the instrument, the bank had the Gallegoses indorse it to Schneider. An indorsement is incomplete, and, indeed, may be disregarded and ignored (Negotiable Instruments Law, § 78; see *McNeill* v. *Shellito,* 185 App. Div. 857, 860; *Dugan* v. *United States,* 3 Wheat. [U. S.] 172, 183), until the instrument is delivered (Negotiable Instruments Law, § 2), and in this case the Gallegoses never did deliver the check to the indorsee Schneider. That party, having refused to accept it, acquired no interest, with the inevitable consequence that it remained as fully negotiable without Schneider's signature as it would have been with it.

Since, then, the check was never negotiated to Schneider (Negotiable Instruments Law, § 60) and its signature never became necessary, it is no defense that Schneider's name was inserted without its authorization. Not every unauthorized " indorsement " is a forgery. A necessary element is that the **signature be one** essential to the further negotiation of the

check; as the Negotiable Instruments Law indicates, an unauthorized signature is significant only if the person seeking to enforce payment has acquired title "through or under such signature" (Negotiable Instruments Law, § 42). In other words, the inscription of Schneider's name could not in any way detract from plaintiff's title to the check or his rights thereunder.

The sole question remaining, therefore, is whether the Gallegoses, who had the power to negotiate the check to plaintiff, actually did so by proper indorsement and delivery. They had initially indorsed the check over to Schneider. True, after Schneider had refused to accept it, they did not indorse it again, but it was not essential that they do so. The trial court found — and no one has questioned it — that both of the Gallegoses then treated the indorsement to Schneider as "fictitious." Consequently, the check became, without more, a bearer instrument, even though only one of the payees, Betty, thereafter indorsed it in blank. So far as is ascertainable, either the husband or the wife wrote Schneider's name on the check before it was delivered to plaintiff. However, the addition of that name had neither legal significance nor effect, for, as already noted, the check had by then become a bearer instrument. It is settled that the holder of a check, though he has indorsed it specially to one person, may, without either striking out the indorsement or adding another, negotiate it to a third person (Negotiable Instruments Law, § 28, subd. 3; see *Phillips* v. *Mercantile Nat. Bank,* 140 N. Y. 556; *Coggill* v. *American Exch. Bank,* 1 N. Y. 113; *Matter of Hammer,* 237 App. Div. 497, affd. 261 N. Y. 677; see, also, Britton on Bills and Notes, p. 697.) In view of the fact that the indorser no longer intends to confer on the indorsee any interest in the check, the law regards the name used as fictitious and treats the check — thus made payable to the order of a fictitious person — as payable to bearer. As this court wrote in the *Phillips* case (*supra,* 140 N. Y. 556, 562): "The names he used were, for his purposes, fictitious, *because he never intended that the paper should reach the persons whose names were upon them.* * * * Concededly, if the names of the payees were of fictitious persons, the Sumter bank would have had no claim upon the defendant; how, then, can the transaction

be said to assume a different aspect because the names adopted were of known persons? That the intention was to treat them as being of fictitious persons is manifest." (Emphasis supplied.)

While this rule is known as the "fictitious payee" doctrine, it applies to indorsees (Negotiable Instruments Law, § 28, subd. 3; see, also, Britton, *op cit.*, p. 696), and, as the quotation from the *Phillips* case illustrates, they need not even be "fictitious." The only operative factor is the intent of — as the case may be — the indorser or the drawer. (See *Phillips* v. *Mercantile Nat. Bank, supra,* 140 N. Y. 556; *Coggill* v. *American Exch. Bank, supra,* 1 N. Y. 113; *Matter of Hammer, supra,* 237 App. Div. 497, affd. 261 N. Y. 677; cf. *Cohen* v. *Lincoln Sav. Bank,* 275 N. Y. 399; *Shipman* v. *Bank of State of N. Y.,* 126 N. Y. 318.) If the drawer or indorser does not intend the named payee or indorsee to receive the check, that party is deemed a merely nominal or "fictitious" indorsee or payee. And, since the indorser or drawer could as easily have made the check payable to bearer, the law regards him as having done so.

It is immaterial, therefore, that, when the indorsement to Schneider was written, both defendant bank and the payees intended that Schneider receive the check. In the first place, the intent of defendant is wholly unimportant; whether the name of the indorsee is "fictitious" depends on the knowledge and intent of the "person making [the check] so payable" (Negotiable Instruments Law, § 28, subd. 3). In this case, only the payees, not the drawer bank, fit this description, and the applicability of the statutory provision must, therefore, be determined solely on the basis of their thinking and intent. Secondly, where an indorsee has refused to accept a check and the payee-indorser delivers it to a third person, it is the indorser's intent at that time, at the time of *delivery,* that controls. (See *Seaboard Nat. Bank* v. *Bank of America,* 193 N. Y. 26, 33; *Horstman* v. *Henshaw,* 11 How. [U. S.] 177; *Ritter* v. *Moore,* 64 Idaho 144.) If he then regards the check as a bearer instrument, his earlier intention, formed when he had no reason to believe that the named indorsee would refuse to accept it, is of no moment.

To the plaint that the bank should not be burdened with the loss, since it is innocent of any wrongdoing, the answer is simple: Hall is a holder in due course and equally innocent. It ill behooves defendant — which could easily have prevented the fraud by making the check payable to Schneider Motors — to seek to foist the loss upon plaintiff, for, as we have written (*Island Trading Co.* v. *Berg Bros.*, 239 N. Y. 229, 233; also, *Zendman* v. *Harry Winston, Inc.*, 305 N. Y. 180, 186), as between two innocent victims of a fraud, "the one who made possible the fraud on the other" should bear the loss.

The judgment appealed from should be affirmed, with costs.

LEWIS, Ch. J., CONWAY, DESMOND, DYE, FROESSEL and VAN VOORHIS, JJ., concur.

Judgment affirmed.