HAROLD M. TASHMAN, Plaintiff, *v.* DOROTHY S. CAMPBELL et al., as Executors of MARY L. SMITH, Deceased, Defendants.

Supreme Court, Trial Term, Kings County, June 25, 1962.

*Edward Gettinger* and *Peter Gettinger* for plaintiff. *Maloney & McDonough* for defendants.

BENJAMIN BRENNER, J. The deceased, Mary Louise Smith, issued the negotiable notes in suit for $30,000 to one Maude Daoud who indorsed them over to the plaintiff for cash and jewelry. These are but 4 of over 150 such promissory notes, totaling about $2,000,000, made by the deceased, principally in

payment for jewelry which she acquired from Mrs. Daoud who, as an auction gallery merchant, traded all or most of them for items purchased from several jewelers, including the plaintiff. Some 96 items of jewelry (practically her entire estate) were found in the vault of the deceased upon her death.

The defendants, outraged by the questionable nature and immensity of these purchases by Mrs. Smith, claim that she was the victim of a "colossal fraud" perpetrated upon her by Mrs. Daoud and that the plaintiff knowingly acquired the notes under obviously suspicious circumstances and that he is one of the beneficiaries of that fraud. Hence, say the defendants, this plaintiff is not a holder in due course of the four negotiable notes in suit under the applicable sections of the Negotiable Instruments Law, §§ 35, 50, 91, 95, 96, 98) which define that term and set out certain legal presumptions and the rights of such a holder.

The background facts for the claimed "colossal fraud" and plaintiff's relationship to it are that Mrs. Daoud had overreached and, in some unexplained way, induced Mrs. Smith to purchase from her quantities of merchandise, mainly jewelry; that Mrs. Smith believed the notes, totaling $2,000,000, which she signed and delivered to Mrs. Daoud, to be mere receipts; that she was thereafter persuaded to issue checks for $2,000,000 in payment therefor; that plaintiff, as one of the jewelers who received some of the notes, knew of or should have realized Mrs. Daoud's overbearing influence and fraud practiced upon Mrs. Smith; that plaintiff failed to produce his cost records upon trial to establish his margain of profits for the jewels which constituted part of the consideration for the notes; that the notes bore no interest and were received by plaintiff both before and after the sale and issuance by him of the jewelry and checks to Mrs. Daoud; that plaintiff's checks, thus given to Mrs. Daoud along with the jewelry, indicate that he tied up large sums of money to acquire the notes and that when they were discounted or pledged the plaintiff had to absorb such costs as well. These, then, are the facts upon which the defendants rely as evidence that Mrs. Smith was defrauded and that plaintiff received the notes in bad faith, rendering him a holder not in due course and subjecting him to the defense of fraud available to the defendants against Mrs. Daoud.

It is not contested that the notes are valid and negotiable on their face, and that they bear the genuine signature of the deceased. While their delivery by her is contested, the statutory presumption of delivery (Negotiable Instruments Law, § 35) has not been met or rebutted by any competent proof. The value

or cost of the jewels which constituted part of the consideration for the notes is in doubt, but it is nonetheless clear that plaintiff did make additional payment therefor in the form of checks which must be presumed to be prima facie evidence of a valuable consideration (Negotiable Instruments Law, § 50) and legally sufficient, regardless of its adequacy (*Yardwood* v. *Trusts & Guar. Co.*, 94 App. Div. 47; *Ruppert* v. *Singhi*, 243 N. Y. 156).

The genuineness of the notes having been conceded and the presumption of their delivery and consideration standing unrebutted, the defendants have the burden of proof as to claimed fraud in the making or factum of the notes without negligence on the part of the maker (*First Nat. Bank of Odessa* v. *Fazzari*, 10 N Y 2d 394; *Hall* v. *Blasdell*, 306 N. Y. 336) and the added burden of proof that plaintiff had knowledge of such claimed defect or, absent such actual knowledge, that he accepted the notes under circumstances amounting to bad faith (Negotiable Instruments Law, § 96).

There is no direct evidence in the record that the notes were procured through fraud. It is insinuated merely that an unsavory relationship existed between the deceased and Mrs. Daoud and that the deceased had an inexplicable desire for a large quantity of jewelry or that she was desirous of converting her cash assets into such jewelry. There is a complete absence of any proof of the essential elements of fraud as between the maker and the payee. Nor is there any clear evidence upon which a reasonable inference may be based to establish elements of *scienter*, reliance and other basic ingredients of fraud. However, even if it were to be accepted that the huge fortune, converted as it was into jewelry, had a nominal value and that this, along with the other circumstances shown in the record, could be regarded as some proof of fraud, the defendants have themselves plainly established that such fraud in the making of the notes was accompanied by the grossest negligence on the part of the maker. She signed more than 150 notes and in her examination before trial, taken before her decease, she claimed that she did so believing them to be receipts. It is inconceivable that she could have made the same mistake 150 times. Nor is it credible that when she issued checks for about $2,000,000 to satisfy the notes, she did so without knowledge of the claimed fraud perpetrated upon her. Upon such clear proof of negligence on the part of the maker, the rights of a holder in due course cannot be defeated even if the existence of fraud be acknowledged (*First Nat. Bank of Odessa* v. *Fazzari, supra*; *Chapman* v. *Rose*, 56 N. Y. 137).

I am also satisfied that plaintiff has established himself to be a holder in due course. He is charged with guilty knowledge because he purchased these noninterest bearing notes, tied up large sums and absorbed discount costs in order to purchase them — all claimed to be indicative of his bad faith. I am satisfied that while the evidence does indicate that such burdens and costs were assumed by the plaintiff, it also establishes that he thereby rid himself of several items of jewelry in stock and through these operations, financed his business. Indeed, on several other occasions the deceased made payment of other of her notes, acquired by plaintiff in similar fashion and accepted by him to finance his business and to move jewelry in stock. Concededly, he did not know, nor did he ever meet the deceased, although he knew that she was a wealthy widow. Undoubtedly he was also aware that she was making large purchases of jewelry but his dealings were confined to Mrs. Daoud and although he may have suspected that she was heavily involving the deceased, to his own benefit, he had no legal obligation to reject the business or make inquiry (*Hall* v. *Blasdell, supra*); nor is his honesty to be impugned because he failed to be diligent when he accepted such commercial paper (*Manufacturers & Traders Trust Co.* v. *Sapowitch,* 296 N. Y. 226). At most it could only be said that the plaintiff may have garnered unexplained profits and should have been aware that the deceased was extending herself. This is not a showing legally sufficient to raise any inference that plaintiff conspired in the claimed fraud or had any guilty knowledge of any defects in the notes in question.

It seems to me that defendants are urging a rather unique theory in their effort to defeat the protection afforded by the law to plaintiff as the holder of negotiable instruments. They appear to urge that, as a holder, he had some duty to explore the good business sense of the deceased; that he should have inquired into her peculiar penchant for jewels and should have avoided dealing with Mrs. Daoud because she was overselling her wealthy customer. The law places no such burdens on the holder of a negotiable instrument, particularly when that holder conducts a lawful business whose nature it is to induce and even solicit the purchase for feminine use of pretty things, such as jewelry. And, in addition to this, certain it is that the decedent either knowingly or carelessly permitted huge quantities of negotiable paper to flow into the channels of trade, among which were the notes in suit.

I conclude, therefore, that the plaintiff has established by a fair preponderance of the credible evidence that he had neither notice nor guilty knowledge of the claimed defect in the making

of the instruments in suit and is therefore a holder in due course thereof. I also find that the defendants have failed to establish that if fraud was indeed practiced upon the deceased, she was herself free from negligence when she issued them. Plaintiff is accordingly entitled to judgment.