353 F.2d 563
 Ralph J. OTTEN, Plaintiff-Appellee,
v.
Anthony R. MARASCO, the United States Marshal for the Southern District of New York and the United States of America, Defendants,
M. Alden Weingart, Intervening Defendant-Appellant.
 No. 72.
 Docket 29493.
 United States Court of Appeals Second Circuit.
 Argued October 21, 1965.
 Decided December 9, 1965.
 
 Arthur J. Cooperman, New York City (Landes & Wingate, New York City, with him on the brief), for appellant.
 Kevin Thomas Duffy, New York City (Melvin Shulman and Whitman, Ransom & Coulson, New York City, with him on the brief), for appellee.
 Before WATERMAN, MOORE and FRIENDLY, Circuit Judges.
 MOORE, Circuit Judge:
 
 
 1
 Ralph J. Otten brought suit in the Southern District of New York to recover twenty-five negotiable bearer bonds, each with a face amount of $1,000, which had been stolen from his home in Pennsylvania on July 28, 1958. The bonds were delivered to the FBI by the intervening defendant-appellant M. Alden Weingart in 1960, and the FBI turned them over to the United States Marshal for the Southern District of New York for distribution. The United States and the United States Marshal, named as defendants in the present suit, are disinterested stakeholders. The opposing real party in interest is the defendant-appellant Weingart, who took the bonds as security for loans which were never repaid, and who claims that he owns the bonds as a holder in due course.
 
 
 2
 In September 1958, Weingart was asked by David Littman to lend $15,000 to a company called Harlem Food Products, Inc., of which Littman was the president. Weingart knew the company well. It was a tenant in a building he owned, and he had invested in the company, selling out at a loss in the summer of 1958. Weingart knew that the company was in serious financial difficulty. He accordingly requested security from Littman who gave him twenty $1,000 bonds. Littman said that the bonds belonged to the president of the Bakers Union, but that he was free to use them as collateral. Weingart lent $15,000 to the company in a circuitous fashion (making the checks payable to an employee of the company rather than to the company itself), without making any inquiry into Littman's authority to use the bonds as collateral.
 
 
 3
 In December 1958 Weingart returned the bonds to Littman so that they could be used in "a year-end audit." On January 15, 1959, Littman borrowed on behalf of the company another $5,000 from Weingart, giving him as collateral all the bonds which are the subject of the present suit as collateral for loans which then totalled $20,000. The $5,000 loan of January 15, like its $15,000 predecessor, was made in a roundabout manner, the check being made payable to a man with no financial interest in the company. In June 1959 Weingart made a further loan of $5,000 to the company, without receiving additional collateral. No loan agreements or notes accompanied any of Weingart's loans to the company.
 
 
 4
 At the end of August 1959, an FBI agent told Weingart that the bonds were stolen. After first saying that he didn't know where the bonds were, Weingart delivered them to the FBI in May 1960.
 
 
 5
 The trial court entered judgment for the plaintiff Otten, on the grounds that Weingart had not shown that he accepted the bonds in good faith without notice of any defect in the title of the person negotiating them. From this judgment Weingart appeals.
 
 
 6
 The applicable law is the Negotiable Instruments Law of New York, the relevant events having taken place before the effective date of the Uniform Commercial Code.[1] Under Section 98 of the Negotiable Instruments Law, McKinney's Consol. Laws, c. 38, once Otten demonstrated that the bonds had been stolen from him, the burden was on Weingart, as a subsequent holder, to prove that he acquired title as a holder in due course. To prove this, Weingart had to show, among other things, that at the time the instruments were negotiated to him, "he had no notice of any infirmity in the instrument[s] or defect in the title of the person negotiating [them]." Section 91(4). Under Section 95,
 
 
 7
 To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith * * *.
 
 
 8
 The trial court did not find it necessary to decide whether Weingart took the bonds with actual knowledge that they were stolen, since he found that Weingart acted in bad faith in taking them.
 
 
 9
 The question before us is whether the trial court erred in holding that Weingart took the instruments in bad faith. New York courts have said that "bad faith is not mere carelessness," but "is nothing less than guilty knowledge or willful ignorance," Manufacturers & Traders Trust Co. v. Sapowitch, 296 N.Y. 226, 229, 72 N.E.2d 166, 168 (1947); Hall v. Bank of Blasdell, 306 N.Y. 336, 118 N.E.2d 464 (1954). But it is clear that failure to inquire may under certain circumstances constitute bad faith under New York law. In United States Fidelity & Guaranty Co. v. Goetz, 285 N.Y. 74, 37 N.E.2d 798 (1941), the Court of Appeals held that a jury question was presented as to whether brokers who failed to comply with stock exchange rules of inquiry in opening up a new account were put on constructive notice that their principal was a thief or took from a thief, and so were not holders in due course of certain bonds. In Munn v. Boasberg, 292 N.Y. 5, 53 N.E.2d 371 (1944), the Court of Appeals held that a jury question was presented as to whether the payee of a check was a holder in due course, when he used the check to satisfy the debt of a person other than the drawer to himself, without inquiring whether the drawer had intended the check to be used in that fashion. In Maber, Inc. v. Factor Cab Co., 19 App. Div.2d 500, 244 N.Y.S.2d 768 (1st Dep't 1963), the court held that a holder of notes payable to X "as attorney for Francisco Silvestry," who had paid X for the notes by checks unqualifiedly made out to X, was chargeable with notice and was not a holder in due course.
 
 
 10
 In the present case, Weingart knew that Harlem Food Products was in financial difficulties. Littman, the president of the company, told Weingart that the bonds did not belong to Littman or to Harlem Food Products, but belonged to the president of the Bakers Union. Under such circumstances, it was not improper to conclude that Weingart should have made some attempt to find out whether Littman was authorized to pledge the bonds, and that his failure to do so constituted "willful ignorance" and therefore bad faith. The secrecy and circuitousness with which Weingart consummated each loan themselves suggest that Weingart had knowledge of facts sufficient to put him on his guard.
 
 
 11
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 The Code applies to transactions and events occurring on and after September 27, 1964. N. Y. Uniform Commercial Code, §§ 10-101, 10-105