———

ABITOR CORPORATION, Appellant, *v.* CHASE MANHATTAN BANK et al., Respondents.
TRADE BANK AND TRUST COMPANY, Third-Party Plaintiff; M. J. P. ENTERPRISES, INC., et al., Third-Party Defendants.

First Department, March 29, 1966.

*Thomas J. Malmud* of counsel (*Samuel Mezansky,* attorney), for appellant.

*Samuel Halpern* of counsel (*Konheim & Halpern,* attorneys), for the Chase Manhattan Bank, respondent.

*Samuel W. Sherman* of counsel (*Edward Gettinger* and *Peter Gettinger,* attorneys), for Trade Bank and Trust Company, respondent.

*Per Curiam.* Plaintiff appeals from a judgment rendered in favor of the defendants after a nonjury trial.

Plaintiff instituted this action against its drawee bank for payment of a check in the amount of $49,500 on an alleged forged indorsement. This check was made payable by plaintiff to its dummy president and certified on August 21, 1962. The trial court, in rendering judgment for the defendant and dismissing the third-party action, held that the check was made to a fictitious person within the meaning of subdivision 3 of section 28 of the Negotiable Instruments Law, thereby it became bearer paper. The trial court concluded that in the absence of proof that respondent Chase Manhattan Bank (Chase) was negligent, that Chase did not act in good faith or that it paid the check with knowledge or notice of some irregularity in the negotiation of the check, plaintiff-appellant could not recover. The court found that Chase acted in good faith and without notice of any irregularity.

We affirm the judgment, though we do so on a ground different from that on which the court based its determination. The facts should be reviewed briefly. Charles Marcus, secretary-treasurer of the plaintiff, a corporation wholly owned by him, is an accountant, jewelry dealer and check casher. He testified that on August 21, 1962, he issued a check in the amount of $49,500

payable to David M. Ainsberg and had the check certified on the afternoon of that day by Chase. That is the check involved in this appeal. Marcus testified that the check was to be used in the purchase of certain jewelry of an estate in connection with a deal which he was entering with one Weisberg. He testified that it was his intention if the deal were satisfactory to have Ainsberg deliver the check, indorse it and do whatever was necessary to consummate the transaction; that Ainsberg was not to use the check or the proceeds for Ainsberg's benefit. Marcus testified he had a practice of buying checks of various corporations from Forlano or Stein which checks were signed by one J. J. Frankel, that he always gave cash for such checks less one half of 1% as commission. On August 21, 1962 Marcus purchased $50,000 worth of checks signed by Frankel. He testified that he had between $100,000 and $120,000 on his person and that he gave cash for the checks purchased; that sometime on the afternoon of that date he was accosted in Rockefeller Plaza by Stein, Forlano and a third person who demanded checks of Frankel which had "bounced"; he refused to give them such checks; he was pushed around and the $49,500 check was taken from him. He made no outcry nor was the incident reported to the police or even to the bank until about November 19, 1962. Marcus testified that he delayed because he hoped to get his money back and that it was not until a burglary occurred at his home sometime in October, 1962 that he reported such burglary and decided to take some action with respect to the $49,500 check. August 28, 1962 Marcus again purchased $50,000 worth of checks signed by Frankel on his various corporations and issued a certified check for $49,500 in payment therefor. This check, like the check of August 21, 1962, was also made out to Ainsberg. The August 28 (not involved in this appeal) check allegedly was one of the items taken when his house was burglarized in October, 1962. Ainsberg testified that he had no recollection of ever indorsing the check of August 28, 1962 and that he had no knowledge of the existence of the August 21, 1962 check involved in this appeal until he appeared at Chase on November 19, 1962 at the request of Marcus and made an affidavit that the indorsement on the August 21 check in his name was not in his handwriting. The check of August 21, 1962 was negotiated through defendant banks. In fact it had been deposited in the Trade Bank and Trust Company on August 21, 1962 and thereafter paid by Chase. On an examination before trial Marcus had given somewhat contradictory testimony as to the loss or discovery of the loss of the check in question.

Frankel, testifying on behalf of the defendants, testified that they had sold numerous checks to Marcus from a period beginning in 1961 and that on August 21, 1962 in the afternoon of that date he received this certified check for $49,500 from Marcus at the Trade Bank in return for five $10,000 checks which he had delivered to Marcus earlier; that he immediately deposited the check, and the records of the bank support that the check was deposited on that day.

Marcus testified that Ainsberg, the payee of the $49,500 check, though president of the corporate plaintiff, had no interest in the business and that the check was to be delivered to Ainsberg solely for the purposes above stated. The evidence showed that Marcus maintained several accounts in Chase, five in the name of corporations and two in the name of the individuals. There was an account in Ainsberg's name on which Marcus had a power of attorney, as he did for all of the other accounts.

Section 28 of the Negotiable Instruments Law provides "The instrument is payable to bearer: * * * 3. When it is payable to the order of a fictitious person, or a non-existing person, or an existing person not intended to have any interest in it, and any such fact was known to the person making it so payable". The check here involved was made out to Ainsberg and Marcus, by his own testimony, intended to deliver the check to Ainsberg who was to indorse it, cash it and utilize the proceeds for Marcus' benefit as he might be directed. The maker's intention thereby was that Ainsberg should have title to and a possessory interest in the check and its proceeds. He would hold such proceeds as a trustee for the benefit of Marcus. Marcus' intention as so testified to precludes the application of subdivision 3 of section 28 of the Negotiable Instruments Law.

Nor are *Matter of Hammer* (237 App. Div. 497, affd. 261 N. Y. 677) and *Hall* v. *Bank of Blasdell* (306 N. Y. 336) to the contrary. In *Matter of Hammer* the maker of the checks never intended that the named payee Heisz would ever receive or become possessed of the checks or the proceeds of the checks and in fact he never did. Heisz was deemed a nominal or fictitious person and since the maker could as easily have made the checks payable to bearer he was regarded in law as having done so. And in *Hall* v. *Bank of Blasdell* defendant bank issued the check drawn to the order of the Gallegos, who were husband and wife. Before delivery of the check to the Gallegos the bank had them indorse it "to the order of Schneider Motors, Hamburg, New York." The payees and indorsees had obtained the loan of $1,000 upon their representation that they wished to purchase a car from Schneider Motors. The check also bore a notation

"payment in full covering one 1948 Nash 4 door Sedan". In fact the Gallegos only owed Schneider $200 balance on the car which they had already purchased. Schneider Motors refused the check and it was never negotiated to it (Negotiable Instruments Law, § 60). Thereafter one of the Gallegos indorsed Schneider's name and negotiated the check for cash with a holder in due course. The indorsement of Schneider's name was unnecessary to the Gallegos' title (Negotiable Instruments Law, § 78) or to negotiation and could be and was disregarded by the Gallegos. (See *Phillips* v. *Mercantile Nat. Bank,* 140 N. Y. 556.) Such indorsement was considered fictitious by the Gallegos. When the check was delivered by the Gallegos to the plaintiff and cashed by him they intended that it be considered as bearer paper and so treated it. In the case before us Ainsberg was a real person whom Marcus intended to have possession of and title to the proceeds of the check though the proceeds were not to be used for Ainsberg's benefit but for the benefit of Marcus. The testimony also showed that on August 21, 1962, when Marcus drew the check for $49,500 and had it certified he deposited a similar amount in Chase. This procedure was repeated on August 28, 1962. It might also be noted that Weisberg was never produced as a witness. The story told by Marcus is so inherently incredible that it is unworthy of belief, warrants and is rejected, and it is on that basis that we affirm the judgment appealed from.

The judgment appealed from should be affirmed, on the law and the facts, with costs and disbursements to respondents.

BREITEL, J. P., McNALLY, STEVENS, EAGER and STEUER, JJ., concur.

Judgment unanimously affirmed, on the law and the facts, with $50 costs to respondents.